Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER E. READ, <br><br> Plaintiff, <br><br> v. <br><br> HEXCEL CORPORATION, JOEL S. BECKMAN, LYNN BRUBAKER, JEFFREY C. CAMPBELL, CYNTHIA M. EGNOTOVICH, THOMAS A. GENDRON, JEFFREY A. GRAVES, GUY C. HACHEY, NICK L. STANAGE, and CATHERINE A. SUEVER, <br><br> Defendants. | Case No._____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Roger E. Read ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against Hexcel Corporation ("Hexcel" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants")

1
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Hexcel will be acquired by Woodward, Inc. ("Woodward"), through its wholly owned subsidiary Genesis Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On January 12, 2020, Hexcel and Woodward issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated January 12, 2020 (the "Merger Agreement") to sell Hexcel to Woodward. Under the terms of the Merger Agreement, each Hexcel stockholder will receive 0.6250 shares of Woodward common stock for each share of Hexcel common stock they own (the "Merger Consideration"). Based on Woodward's January 10, 2020 closing stock price, the Merger Consideration had an implied value of $76.23 per Hexcel share. Upon completion of the merger, existing Woodward shareholders will own approximately 55% and existing Hexcel shareholders will own approximately 45% of the combined company on a fully diluted basis.

3.     On February 28, 2020, Woodward filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC. The Registration Statement, which recommends that Hexcel stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's, Woodward's and the pro forma combined company's financial projections, relied upon by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman"), in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman; and (iii) Goldman's potential conflicts of interest. Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Hexcel's public stockholders will be irreparably harmed because the Registration Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) one of the Company's research and technology administration and principal laboratories is located in this District in Dublin, California; and (ii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Hexcel.

9. Defendant Hexcel is a Delaware corporation with its principal executive offices located at Two Stamford Plaza, 281 Tresser Boulevard, 16th Floor, Stamford, Connecticut 06901. The Company develops, manufactures and markets lightweight, high-performance structural

3
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

materials, including carbon fibers, specialty reinforcements, prepregs and other fiber-reinforced matrix materials, honeycomb, adhesives, engineered core and composite structures, used in commercial aerospace, space and defense and industrial applications. Hexcel's common stock trades on the New York Stock Exchange under the ticker symbol "HXL."

10. Defendant Joel S. Beckman ("Beckman") has been a director of the Company since 2003.

11. Defendant Lynn Brubaker ("Brubaker") has been a director of the Company since 2005.

12. Defendant Jeffrey C. Campbell ("Campbell") has been a director of the Company since 2003.

13. Defendant Cynthia M. Egnotovich ("Egnotovich") has been a director of the Company since January 2015.

14. Defendant Thomas A. Gendron ("Gendron") has been a director of the Company since December 2010. Defendant Gendron has also served as President of Woodward since 2002, Chief Executive Officer ("CEO") of Woodward since 2005, and Chairman of Woodward's board of directors since 2007.

15. Defendant Jeffrey A. Graves ("Graves") has been a director of the Company since 2007.

16. Defendant Guy C. Hachey ("Hachey") has been a director of the Company since 2014.

17. Defendant Nick L. Stanage ("Stanage") has been President of the Company since November 2009, CEO of the Company since August 2013, and Chairman of the Board since January 2014.

18. Defendant Catherine A. Suever ("Suever") has been a director of the Company since 2018.

19. Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20. Woodward is a Delaware corporation with its principal executive offices located at 1081 Woodward Way, Fort Collins, Colorado 80524. Founded in 1870 and incorporated in 1902, Woodward is an independent designer, manufacturer, and service provider of control solutions for the aerospace and industrial markets. Woodward's customers include leading original equipment manufacturers and end users of their products, and its strategic focus is providing energy control and optimization solutions for the aerospace and industrial markets. Its two reportable segments are aerospace and industrial. Woodward's common stock trades on the NASDAQ Global Select Market under the ticker symbol "WWD."

21. Merger Sub is a Delaware corporation and wholly owned subsidiary of Woodward.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

22. Hexcel Corporation was founded in 1946 and is a leading advanced composites company. Hexcel develops, manufactures, and markets lightweight, high-performance structural materials, including carbon fibers, specialty reinforcements, prepregs and other fiber-reinforced matrix materials, honeycomb, adhesives, radio frequency / electromagnetic interference ("RF/EMI") and microwave absorbing materials, engineered honeycomb and composite structures, for use in Commercial Aerospace, Space & Defense and Industrial markets. The Company's products are used in a variety of end applications, such as commercial and military aircraft, space launch vehicles and satellites, wind turbine blades, automotive, recreational products and other industrial applications.

23. The Company's two reportable segments are: Composite Materials and Engineered Products. The Composite Materials segment is comprised of Hexcel's carbon fiber, specialty reinforcements, resins, prepregs and other fiber-reinforced matrix materials, and honeycomb core product lines and pultruded profiles. The Engineered Products segment is comprised of lightweight high strength composite structures, RF/EMI and microwave absorbing materials, engineered core and specialty machined honeycomb products with added functionality.

24. On February 3, 2020, Hexcel announced its fourth quarter and full year 2019 financial results. The Company's GAAP diluted EPS was $0.86 for the quarter, an increase of 13% from the fourth quarter of 2018 GAAP diluted EPS. Sales for the period were $564 million, compared to $561 million in the fourth quarter of 2018. Company highlights for the full year 2019 included GAAP diluted EPS of $3.57, compared to $3.11 for the full year 2018; adjusted diluted EPS of $3.54, an increase of 16% compared to adjusted diluted EPS of $3.05 for 2018; and $2.356 billion in sales, an increase of 8% to sales for 2018. Hexcel also generated a record $287 million in free cash flow for the year. Reflecting on the Company's performance while also looking ahead, defendant Stanage stated:

> The fourth quarter of 2019 completed a strong year for Hexcel, returning $0.86 of diluted EPS and $172 million of free cash flow. Revenue for the full year was $2,356 million, up 8.6% in constant currency compared to 2018, with adjusted diluted EPS for the year coming in 16% above 2018 at $3.54. Free cash flow for 2019 was $287 million, an increase of 21% over 2018. Our team continues to deliver productivity and efficiency improvements across the business, as evident in our strong 2019 annual performance. Turning to 2020, we are staying close to Boeing, and all our customers, as we monitor the uncertainty regarding the timing of the 737 MAX's return to service and expected production levels. In consideration of the production cuts that affected total year sales in 2019, we have included our best assumptions in our 2020 guidance. With an exciting year ahead of us, we remain confident in the outlook for Hexcel, our healthy cash flow generation and our ability to deliver exceptional shareholder value.

**The Proposed Transaction**

25. On January 12, 2020, Hexcel and Woodward issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> FORT COLLINS, Colo. & STAMFORD, Conn.--(BUSINESS WIRE)--Woodward, Inc. (NASDAQ: WWD) and Hexcel Corporation (NYSE: HXL) today announced a definitive agreement to combine in an all-stock merger of equals to create a premier integrated systems provider serving the aerospace and industrial sectors. The combined company will focus on technology-rich innovations to deliver smarter, cleaner, and safer customer solutions.
>
> Under the terms of the agreement approved by the Boards of Directors of both companies, Hexcel shareholders will receive a fixed exchange ratio of 0.625 shares of Woodward common stock for each share of Hexcel common stock, and Woodward shareholders will continue to own the same number of shares of common stock in the combined company as they do immediately prior to the closing. The exchange ratio is consistent with the 30-day average share prices of both companies. Upon completion of the merger, existing Woodward shareholders will own approximately 55% and existing Hexcel shareholders will own approximately 45% of the combined company on a fully diluted basis. In connection with the transaction, Woodward is increasing its quarterly cash dividend to $0.28 a share. The merger is expected to be tax free for U.S. federal income tax purposes.
>
> The combined company, to be named Woodward Hexcel, will be among the top independent aerospace and defense suppliers globally by revenue. It will have more than 16,000 employees, manufacturing operations in 14 countries on five continents, and a diversified customer base across multiple markets. For each company's respective fiscal year 2019 on a pro forma basis, the combined company is expected to generate net revenues of approximately $5.3 billion and EBITDA of $1.1 billion, or a 21% EBITDA margin.
>
> Nick Stanage, Chairman, Chief Executive Officer and President of Hexcel, will serve as Chief Executive Officer of the combined company. Tom Gendron, Chairman, Chief Executive Officer and President of Woodward, will serve as Executive Chairman of the combined company until the first anniversary of the closing of the merger, at which time Mr. Gendron intends to retire from the company and will then serve as non-executive Chairman of the combined company until the second anniversary of the merger close. At that point, Mr. Stanage will assume the role of Chairman of the Board in addition to his CEO responsibilities. The combined company's Board of Directors will have 10 members, consisting of five directors from each company, including Mr. Gendron and Mr. Stanage.
>
> Mr. Goncalves stated: "We are excited to be able to deliver real value to the shareholders of both Woodward and Hexcel through a value enhancing and leverage-neutral transaction. By combining the best-in-class quality of Hexcel's assets and its

enviable product mix with Woodward' debt profile and proven management team, we are creating a premier North American company, self-sufficient in iron ore pellets and geared toward high value-added steel products."

Mr. Gendron said, "Our two companies are each independently working toward addressing the sustainability and efficiency needs of our customers. This merger accelerates our technology investments and creates greater benefits and growth opportunities than either company could have achieved alone. Both Woodward and Hexcel have attractive growth trajectories, with strong aftermarket positions and increased composite penetration driving our respective outlooks. Our complementary cultures and shared commitment to operational excellence and customer satisfaction, together with our enhanced financial strength, will position us to better serve our OEM and aftermarket customers. We will be stronger together and are committed to delivering even greater value to all our stakeholders."

Mr. Stanage said, "The future of flight and energy efficiency will be defined by next-generation platforms delivering lower cost of ownership, reduced emissions, and enhanced safety – and a combined Hexcel and Woodward will be at the forefront of this evolution. Woodward's innovative control systems and Hexcel's advanced lightweight materials are designed to drive improved reliability, efficiency, and emissions. Through our combined scale and strong cash flow profile, we will be even better positioned to accelerate innovation in aerodynamics and propulsion efficiencies and support evolving customer needs. I am incredibly excited about what we can accomplish by uniting these two premier companies and world-class teams with similar values, cultures, and operating philosophies."

***

Woodward Hexcel will be headquartered in Fort Collins, Colorado. The combined company will be led by a highly experienced and proven leadership team that reflects the strengths and capabilities of both organizations. In addition and to ensure a seamless integration, Woodward and Hexcel will establish a dedicated integration planning team, led by Bob Weber, Vice Chairman of Woodward, and Rob Hennemuth, Executive Vice President of Human Resources and Communications at Hexcel.

The transaction is subject to the approval of the shareholders of both Woodward and Hexcel, as well as other customary closing conditions, including required regulatory approvals. The parties expect the merger to close in the third calendar quarter of 2020, subject to satisfaction of these conditions.

**Insiders' Interests in the Proposed Transaction**

26. Hexcel insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted

because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Hexcel.

27. Notably, several Company insiders will secure positions for themselves with the combined company. Specifically, it appears that defendant Stanage will serve as CEO of the combined company and will transition onto the combined company's board of directors. Similarly, defendant Gendron is also expected to transition onto the combined company's board of directors and will serve as its Executive Chairman. The Merger Agreement further provides that four additional current members of the Hexcel Board will be designated to serve on the combined company's board of directors.

28. Further, if they are terminated in connection with the Proposed Transaction, Hexcel's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Named Executive Officer | Cash ($) (1) | Equity Awards ($) (2) | Pension($) (3) | Benefits($) (4) | Total ($) |
|---|---|---|---|---|---|
| Nick L. Stanage | 5,922,850 | 9,217,814 | 1,323,607 | 40,081 | 16,504,352 |
| Patrick J. Winterlich | 1,939,941 | 1,613,498 | — | 32,065 | 3,585,504 |
| Gail E. Lehman | 1,636,662 | 1,321,056 | — | 30,865 | 2,988,583 |
| Robert G. Hennemuth | 2,381,749 | 1,328,875 | — | 33,647 | 3,744,271 |
| Thierry Merlot | 2,243,621 | 2,156,948 | — | — | 4,400,569 |

29. Moreover, the Company's named executive officers are also expected to receive a change in control bonus in connection with the Proposed Transaction, as set forth in the table below:

| Named Executive Officer | Base Salary Component of Severance ($) | Bonus Component of Severance ($) | Pro-Rata Annual Bonus (Merger)($) | Total ($) |
|---|---|---|---|---|
| Nick L. Stanage | 2,540,590 | 2,850,198 | 532,062 | 5,922,850 |
| Patrick J. Winterlich | 1,093,950 | 655,075 | 190,917 | 1,939,941 |
| Gail E. Lehman | 910,273 | 590,221 | 136,167 | 1,636,662 |
| Robert G. Hennemuth | 1,358,486 | 887,787 | 135,476 | 2,381,749 |
| Thierry Merlot (a) | — | — | 131,637 | 2,243,621 |

**The Registration Statement Contains Material Misstatements or Omissions**

30. The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Hexcel's stockholders. The Registration Statement misrepresents

9
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

31. Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Hexcel's, Woodward's and the pro forma combined company's financial projections, relied upon by the Company's financial advisor Goldman in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman; and (iii) Goldman's potential conflicts of interest.

***Material Omissions Concerning Hexcel's, Woodward's, and the Pro Forma Combined Company's Financial Projections***

32. The Registration Statement omits material information regarding the Company's, Woodward's, and the pro forma combined company's financial projections provided by Hexcel's and Woodward's management and relied upon by Goldman for its financial analyses.

33. For example, in connection with performing its Illustrative Discounted Cash Flow Analysis--Hexcel Standalone, Illustrative Discounted Cash Flow Analysis--Woodward Standalone, Illustrative Discounted Cash Flow Analysis--Pro Forma Combined Company, Illustrative Present Value of Future Share Price Analysis--Hexcel Standalone, Illustrative Present Value of Future Share Price Analysis--Woodward Standalone and Illustrative Present Value of Future Share Price Analysis—Pro Forma Combined Company, Goldman utilized the Company's, Woodward's and the pro forma combined company's unlevered free cash flows ("UFCFs"), earnings per share estimates, and cumulative dividends per share. Registration Statement at 67-70. The Registration Statement, however, fails to disclose the Company's, Woodward's and the pro forma combined company's UFCFs, earnings per share estimates, and cumulative dividends per share over the projection period,

and the line items underlying the Company's, Woodward's and the pro forma combined company's UFCFs.

34. The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of Hexcel's Financial Advisor" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning Goldman's Financial Analyses**

35. The Registration Statement describes Goldman's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Hexcel's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

36. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis--Hexcel Standalone*, the Registration Statement fails to disclose: (i) the estimates of UFCF for Hexcel for the years 2020 through 2024; (ii) the terminal year estimate of EBITDA to be generated by Hexcel; (iii) Hexcel's net debt as of December 31, 2019; (iv) amounts attributable to tax-effected pension underfunding and other post-employment benefits as of December 31, 2019; and (v) capitalized joint venture income.

37. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis--Woodward Standalone*, the Registration Statement fails to disclose: (i) the estimates of UFCF for Woodward for the first nine months of 2020 and for the full calendar years 2021 through 2024; (ii) the terminal year estimate of EBITDA to be generated by Woodward; (iii) Woodward's net debt as of December 31,

2019; and (iv) amounts attributable to tax-effected pension underfunding and other post-employment benefits as of December 31, 2019.

38. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis—Pro Forma Combined Company*, the Registration Statement fails to disclose: (i) the estimates of UFCF for the pro forma combined company for the years 2020 through 2023; (ii) the terminal year estimate of EBITDA to be generated by the pro forma combined company taking into account the potential combined company synergies; (iii) pro forma net debt as of December 31, 2019; (iv) amounts attributable to tax-effected pension underfunding of the pro forma combined company and other post-employment benefits as of December 31, 2019; (v) amounts attributable to estimated transaction costs of the pro forma combined company; and (vi) capitalized joint venture income.

39. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis--Hexcel Standalone*, the Registration Statement fails to disclose the earnings per share estimates for Hexcel and cumulative dividends per share expected to be paid to Hexcel stockholders for the years 2020 through 2022.

40. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis--Woodward Standalone*, the Registration Statement fails to disclose the earnings per share estimates for Woodward and cumulative dividends per share expected to be paid to Woodward stockholders for the years 2020 through 2022.

41. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis—Pro Forma Combined Company*, the Registration Statement fails to disclose the earnings per share estimates for the pro forma combined company and cumulative dividends per share expected to be paid to the combined company stockholders for the years 2020 through 2022.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

42. The omission of this information renders the statements in the "Opinion of Hexcel's Financial Advisor" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Goldman's Potential Conflicts of Interest***

43. The Registration Statement omits material information regarding potential conflicts of interest of Goldman.

44. Specifically, the Registration Statement sets forth:

> Goldman Sachs also has provided certain financial advisory and/or underwriting services to Woodward and its affiliates from time to time. However, during the two-year period ended January 10, 2020, the Investment Banking Division of Goldman Sachs has not been engaged by Woodward or its affiliates to provide financial advisory or underwriting services for which Goldman Sachs has recognized compensation. Goldman Sachs may also in the future provide financial advisory and/or underwriting services to Hexcel, Woodward and their respective affiliates for which the Investment Banking Division of Goldman Sachs may receive compensation.

*Id.* at 71. The Registration Statement fails, however, to disclose whether during the two-year period ended January 10, 2020, the Investment Banking Division of Goldman was providing financial advisory or underwriting services for which it expects to receive fees from Woodward that it has not yet recognized, and the amount of compensation Goldman expects to recognize.

45. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

46. The omission of this information renders the statements in the "Opinion of Hexcel's Financial Advisor" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

# CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

47.     Plaintiff repeats all previous allegations as if set forth in full.

48.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

49.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's, Woodward's and the pro forma company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman, and Goldman's potential conflicts of interest.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

50.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

51.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

52. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

53. Plaintiff repeats all previous allegations as if set forth in full.

54. The Individual Defendants acted as controlling persons of Hexcel within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Hexcel, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Registration Statement.

57. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Hexcel's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Hexcel, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Hexcel stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: March 9, 2020                          **WEISSLAW LLP**
                                              Joel E. Elkins

                                              By: */s/ Joel E. Elkins*

                                              Joel E. Elkins
                                              9107 Wilshire Blvd., Suite 450
                                              Beverly Hills, CA 90210
                                              Telephone: 310/208-2800
                                              Facsimile: 310/209-2348
                                                     -and-
                                              Richard A. Acocelli
                                              1500 Broadway, 16th Floor
                                              New York, NY 10036
                                              Telephone: 212/682-3025
                                              Facsimile: 212/682-3010

                                              *Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS